# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL ACTION |
| | ) | |
| v. | ) | No. 09-20005-08-KHV |
| | ) | |
| JAVIER DOZAL, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

On June 8, 2010, the Court sentenced defendant to 151 months in prison based on a binding plea agreement under Rule 11(c)(1)(C), Fed. R. Crim. P. Judgment In A Criminal Case (Doc. #873). On November 2, 2015, the Court overruled defendant's motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). Memorandum And Order (Doc. #1121). The Tenth Circuit Court of Appeals affirmed. See Order And Judgment (Doc. #1141) filed April 27, 2016. The United States Supreme Court recently held that defendants who plead guilty under Rule 11(c)(1)(C) generally are eligible for relief under Section 3582(c)(2). Hughes v. United States, 138 S. Ct. 1765, 1778 (2018) (in "usual case," court acceptance of 11(c)(1)(C) agreement and sentence imposed pursuant to agreement are "based on" defendant's Guidelines range). After Hughes, the parties submitted an agreed order on AO Form 247 and requested a reduced sentence of 135 months. At the Court's direction, defendant has filed a brief related to the parties' request. See defendant's Memorandum Explaining Sentence Reduction (Doc. #1257) filed September 26, 2018. The government has not filed any opposition to defendant's memorandum. For reasons stated below, however, the Court lacks jurisdiction to reduce defendant's sentence under Section 3582(c)(2).

A federal district court may modify a defendant's sentence only where Congress has

expressly authorized it to do so.  See 18 U.S.C. § 3582(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996).  Section 3582(c)(2) permits the Court to reduce a sentence if defendant has been sentenced to a term of imprisonment "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."  18 U.S.C. § 3582(c).  To obtain relief under Section 3582(c)(2), defendant must overcome three distinct hurdles: (1) under the statute's "based on" clause, defendant must show he was sentenced based on a Guidelines range that the Sentencing Commission lowered after his sentencing; (2) under the statute's "consistent with" clause, defendant must show that his request for a sentence reduction is consistent with the Commission's policy statements; and (3) defendant must convince the district court to grant relief in light of the sentencing factors found in Section 3553(a).  United States v. C.D., 848 F.3d 1286, 1289-90 (10th Cir. 2017).  Under Tenth Circuit precedent, the first hurdle is jurisdictional.  Id. at 1289.

The proceedings on a Section 3582(c)(2) motion "do not constitute a full resentencing."  United States Sentencing Guidelines ("U.S.S.G.") § 1B1.10(a)(3); see Dillon v. United States, 560 U.S. 817, 825-26 (2010) (statute's text, together with its narrow scope, shows Congress intended to authorize only limited adjustment to otherwise final sentence and not plenary resentencing proceeding; court does not impose new sentence in usual sense, but merely reduces otherwise final sentence in certain limited circumstances).  In determining whether and to what extent a reduction is warranted under Section 3582(c)(2), the Court determines the amended guideline range that would have applied if the retroactive amendment had been in effect when defendant was originally sentenced.  U.S.S.G. § 1B1.10(b)(1).  In doing so, the Court substitutes only the retroactive amendments listed in Section 1B1.10(d) for the corresponding Guidelines provisions that were

applied when defendant was sentenced and "shall leave all other guideline application decisions unaffected." Id.; see Freeman v. United States, 564 U.S. 522, 531 (2011) (plurality opinion) (all Guidelines decisions from original sentencing remain in place, except sentencing range that retroactive amendment altered). Accordingly, the Court cannot recalculate aspects of a sentence that the retroactive amendment did not impact. United States v. Battle, 706 F.3d 1313, 1317 (10th Cir. 2013); see Dillon, 560 U.S. at 831 (Section 3582(c)(2) proceedings do not permit challenges to aspects of sentence not affected by Commission amendment to § 2D1.1).

Amendment 782 to the Sentencing Guidelines lowered the base offense levels for certain quantities in the Drug Quantity Table at Section 2D1.1. The Court originally found that defendant was not eligible for relief under Amendment 782 because his sentence was based on the binding plea agreement under Rule 11(c)(1)(C), not his Guidelines range. See Memorandum And Order (Doc. #1121) at 1 (citing United States v. Graham, 704 F.3d 1275, 1278 (10th Cir. 2013)). Even after Hughes, supra, however, defendant is not eligible for relief because he was not sentenced based on a Guidelines range that the Sentencing Commission lowered. As explained below, Amendment 782 does not lower defendant's base offense level of 38.

Under the Sentencing Guidelines, the Court generally calculates both the quantity of the mixture of methamphetamine and the quantity of methamphetamine (actual), and uses whatever corresponding offense level is greater. See U.S.S.G. § 2B1.1, Note B to the Drug Quantity Table (in case of mixture or substance containing PCP, amphetamine or methamphetamine, use offense level determined by entire weight of mixture or substance, or offense level determined by weight of PCP (actual), amphetamine (actual) or methamphetamine (actual), whichever is greater). The 2009 Guidelines, which the Court applied at sentencing, established an offense level 38 for

"15 KG or more of Methamphetamine, or 1.5 KG or more of Methamphetamine (actual), or 1.5 KG or more of "Ice." U.S.S.G. § 2D1.1(c)(1) (Nov. 1, 2009). At sentencing, the Court assessed a base offense level 38 because the "quantity of methamphetamine attributed to this conspiracy and reasonably foreseeable to Javier Dozal exceeds 15 kilograms of methamphetamine (1.5 kilograms of Methamphetamine (actual)), resulting in a base offense level 38." Presentence Investigation Report ("PSR") (Doc. #857) ¶ 75. Amendment 782 raised the threshold quantity to trigger an offense level 38. The current Guidelines establish an offense level 38 for "45 KG or more of Methamphetamine, or 4.5 KG or more of Methamphetamine (actual), or 4.5 KG or more of "Ice." U.S.S.G. § 2D1.1(c)(1) (Nov. 1, 2018).

At the original sentencing, the Court did not need to make a specific finding of quantity of the methamphetamine mixture or methamphetamine (actual) beyond the threshold quantities to qualify for the highest base offense level of 38. See PSR (Doc. #857) ¶ 75 (finding drug quantity exceeded "15 kilograms of methamphetamine (1.5 kilograms of methamphetamine (actual))"). In this proceeding under Section 3582(c)(2), however, the Court is not bound to find *exactly* the original threshold quantities of 15 kilograms of methamphetamine or 1.5 kilograms of methamphetamine (actual). See Battle, 706 F.3d at 1319. To determine the amended guideline range that would have applied under Amendment 782, the Court may look to its previous findings, including any portion of the presentence investigation report adopted at sentencing, to make supplemental calculations of drug quantity. Id.; see United States v. Bruner, 513 F. App'x 779, 786 (10th Cir. 2013) (district court has authority to make supplemental drug-quantity calculation); United States v. Valdez, 320 F. App'x 863, 866 (10th Cir. 2009) (in § 3582(c)(2) proceeding, court may rely on facts in PSR adopted at original sentencing).

The PSR summarized the quantity of drugs as follows:

64. Various quantities of methamphetamine were seized throughout this investigation; some of the seizures were the result of traffic stops, and others were the result of consent searches and/or search warrants. At one residence, the methamphetamine exhibits seized were determined to be nearly 100% pure (Exhibit 17, 1,792 net grams at 98.3% purity; Exhibit 18.01, 214.9 net grams at 98.7% purity; and Exhibit 18.03, 6.1 net grams at 92.6% purity). Other seizures ranged in purity from 11.9% to 56.9%. The average purity of all the methamphetamine seized was 46.05%.

65. In paragraphs 43-44, Naranjo discusses the drug debt she owes to Javier Dozal for prior drugs which he supplied to her.

66. In paragraph 46, Javier Dozal tells Naranjo that he is sending his brother to her to provide her with "the set of sheets" (ounces of crystal methamphetamine).

67. In paragraph 57, Javier Dozal tells Nino he had "two exact little carpets" (two ounces of crystal methamphetamine).

68. In paragraph 58, Javier Dozal tells Nino he has the "seven dwarfs kind" (kilograms of cocaine) and the "kind that I work" (unknown ounces of crystal methamphetamine).

69. In paragraph 59, Javier Dozal tells Nino he needed to "get rid of two or 3" (2-3 ounces of crystal methamphetamine).

70. Additionally, numerous co-defendants in this case cooperated with the government and provided information relative to the conspiracy. Defendant Secundino Arias-Garcia (Nino) advised the case agent that he met Javier Dozal and his brother, Carlos Dozal-Alvarez, in 2003. Mr. Arias-Garcia reported that from that time until the time of his arrest in January of 2009, he bought multiple ounces of methamphetamine from both brothers. He reported on average purchasing two to three ounces a week from Guero and Charlie. Over a six year period, purchasing two ounces of methamphetamine week, would result in 624 ounces of methamphetamine or 17.690 kilograms. Other defendants reported purchasing methamphetamine from Javier Dozal as well.

PSR (Doc. #857).

The sum of methamphetamine mixture outlined in Paragraphs 66 through 70 is 17,916.8 grams, or 17.916 kilograms (sum of 56.7 grams of crystal methamphetamine in each of

paragraphs 66 through 69 and 17,690 grams of methamphetamine in Paragraph 70).[1] Using the conversion percentage outlined in Paragraph 64, the total amount of methamphetamine (actual) attributable to defendant is 8.25 kilograms (17.916 kilograms multiplied by 46.05%).

Under the amended guidelines, using the amount of methamphetamine mixture attributable to defendant in the PSR (17.916 kilograms), defendant's base offense level is 36. See U.S.S.G. § 2D1.1(c)(2) (Nov. 1, 2018) (base offense level 36 for at least 15 KG but less than 45 KG of methamphetamine). Even so, using the amount of methamphetamine (actual) attributable to defendant in the PSR (8.25 kilograms), defendant's offense level remains 38 because it exceeds the current threshold of 4.5 kilograms of methamphetamine (actual).[2] See U.S.S.G. § 2D1.1(c)(1) (Nov. 1, 2018) (base offense level 38 for 45 KG or more of methamphetamine, or 4.5 KG or more

---

[1] Paragraph 64 does not attribute any amount to defendant. The paragraph simply sets forth a percentage to convert the total amount of methamphetamine to methamphetamine (actual) based on the average purity of all methamphetamine seized throughout the investigation of the conspiracy involving some 25 individuals.

Paragraph 65 refers to a drug debt of $2,000. set forth in Paragraphs 43 and 44 of the PSR. Paragraphs 43, 44 and 65 do not identify what drug was involved. Paragraph 44 refers to "one ounce" being used as partial satisfaction of the drug debt, but again does not refer to the specific substance. Accordingly, Paragraph 65 cannot be used to attribute any amount of methamphetamine mixture or methamphetamine (actual) to defendant.

Each of Paragraphs 66 through 69 support a finding of 56.7 grams (2 ounces multiplied by 28.35 grams per ounce) of crystal methamphetamine because two ounces is the minimum quantity set forth in each paragraph. See PSR (Doc. #857), ¶¶ 66-68 (unknown "ounces of crystal methamphetamine"); id., ¶ 69 ("2-3 ounces of crystal methamphetamine").

[2] The Court reached a similar conclusion in the case of defendant's brother, Carlos Dozal-Alvaraez, who also is referred to in Paragraph 70. See Order [As To Dozal-Alvarez] (Doc. #1117) filed August 18, 2015 at 1 (defendant not eligible for relief under Amendment 782); Order To Show Cause [As To Dozal-Alvarez] (Doc. #1112) filed April 27, 2015 at 1-2 (defendant's base offense level appears to remain 38 because at least 8.15 kilograms of methamphetamine (actual) attributed to defendant by using conversion percentage set forth in PSR).

of methamphetamine (actual), or 4.5 KG or more of "Ice").

Defendant argues that at sentencing, the Court had no reason to assess whether the allegations in Paragraph 70 were true because that paragraph did not make a difference in his sentence. Memorandum Explaining Sentence Reduction (Doc. #1257) at 5. Defendant reasons that "Paragraphs 64-69 demonstrate [his] culpability for between 1.5 and 4.5 kilograms of actual methamphetamine, which qualify him for a base offense level of 36 under the guideline amendments, and thus a sentencing reduction." Id. at 4. Paragraphs 64 through 69, however, are insufficient to support a finding that defendant was responsible for between 1.5 kilograms and 4.5 kilograms of actual methamphetamine. As explained above, Paragraph 64 does not attribute any amount to defendant – it merely calculates a percentage to convert the total methamphetamine mixture to methamphetamine (actual) based on all methamphetamine seized during the investigation. See supra note 1. The PSRs of several co-defendants included the same paragraph for the same purpose. See, e.g., Presentence Investigation Report [Of Secundino Arias-Garcia] (Doc. #709) ¶ 99; Presentence Investigation Report [Of Hugo Chavez-Cadenas] (Doc. #880) ¶ 80; Presentence Investigation Report [Of Jose Jimenez-Alvarez] (Doc. #805) ¶ 75; Presentence Investigation Report [Of Carlos Dozal-Alvarez] (Doc. #870) ¶ 58. Paragraph 65 does not set forth any drug quantity. See supra note 1. Paragraphs 66 through 69 attribute to defendant a total of some 226 grams of crystal methamphetamine, which is often referred to as "Ice" because of its purity, but that amount is well short of the 1.5 kilograms of "Ice" necessary to trigger a base offense level 38 under the former Guidelines. Accordingly, in finding that the quantity of methamphetamine reasonably foreseeable to defendant exceeded "15 kilograms of methamphetamine (1.5 kilograms of Methamphetamine (actual))," PSR (Doc. #857) ¶ 75, the

Court necessarily included the quantity of methamphetamine in Paragraph 70 (17.69 kilograms).

In an attempt to avoid the findings in Paragraph 70, defendant argues that in determining drug quantity in a Section 3582(c)(2) proceeding where the original amount attributable to defendant was not specific, the Court must apply current law. See Memorandum Explaining Sentence Reduction (Doc. #1257) at 5-6 (citing United States v. Womack, 833 F.3d 1237 (10th Cir. 2016)). Defendant maintains that under current Tenth Circuit precedent, the allegations in Paragraph 70 are insufficient to attribute the total quantity alleged, or any specific part of that quantity, to him. Memorandum Explaining Sentence Reduction (Doc. #1257) at 6 (citing United States v. Figueroa-Labrada, 720 F.3d 1258, 1265 (10th Cir. 2013), United States v. Biglow, 554 F. App'x 679 (10th Cir. 2014) and United States v. Ellis, 868 F.3d 1155, 1178 (10th Cir. 2017)). As explained above, however, in determining the amended guideline range that would have applied, the Court substitutes only the retroactive amendments listed in Section 1B1.10(d) for the corresponding Guidelines provisions that were applied when defendant was sentenced and "shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1). [3] Section 3582(c)(2) does not permit the Court to revisit its initial finding that defendant was

---

[3] In Womack, defendant argued that because a prior appeal had settled the issue of drug weight, the district court had to apply retroactive Amendment 782 (which lowered the base offense levels for specific quantities) without also recalculating drug weight under retroactive Amendment 750(Part A) (which increased marijuana equivalent of gram of methamphetamine in cases involving multiple controlled substances). The net effect of applying both amendments to Womack's sentence would have resulted in no relief. The district court reduced defendant's sentence, finding that Amendment 782 applied and Amendment 750(Part A) did not. See id. at 1240. The Tenth Circuit reversed. It held that in considering a motion under Section 3582(c)(2), the district court had to recalculate the drug weight based on the law in existence at the time, which included both retroactive amendments. See id. at 1241. Womack does not stand for the broader proposition that in a Section 3582(c)(2) proceeding, the Court should reevaluate prior findings of drug quantity based on changes in the law other than retroactive Guidelines amendments.

responsible for at least 15 kilograms of methamphetamine and 1.5 kilograms of methamphetamine (actual), which necessarily credited the findings in Paragraph 70. At sentencing, defendant did not object to the findings in the PSR, which the Court adopted without change. See Statement Of Reasons (Doc. #874) filed June 9, 2010, at 1. Defendant cannot challenge this Court's original findings of drug quantity as part of this Section 3582(c)(2) proceeding.[4] As explained above, based on the findings in the original PSR, which the Court adopted in its entirety, defendant's base offense level remains unchanged because he is responsible for at least 8.25 kilograms of methamphetamine (actual).

In sum, defendant is not entitled to relief under Amendment 782 to the Sentencing Guidelines.

**IT IS SO ORDERED.**

Dated this 11th day of February, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[4] See United States v. Larsen, 664 F. App'x 751, 753 (10th Cir. 2016) (because defendant did not object to drug quantity calculation at sentencing and Amendment 782 does not impact how quantities of drugs are calculated, district court had no ability to revisit calculations); United States v. Burkins, 596 F. App'x 685, 690 (10th Cir. 2014) (challenge to drug quantity finding should be raised on direct appeal, not in § 3582(c)(2) proceeding); United States v. Washington, 759 F.3d 1175, 1184-85 (10th Cir. 2014) (attack on quantity calculation would be "brand new direct appeal, something utterly at odds with the limited and streamlined eligibility determination envisioned in § 3582(c)(2), U.S.S.G. § 1B1.10, and Dillon"); United States v. Kennedy, 722 F.3d 439, 442-43 (D.C. Cir. 2013) (district court adoption of PSR was implicit drug-quantity finding, which could not be collaterally attacked in § 3582(c)(2) proceeding); United States v. Hooks, 551 F.3d 1205, 1217 (10th Cir. 2009) (under Fed. R. Crim. P. 32(i)(3)(A), district court may accept undisputed portion of PSR as finding of fact); Valdez, 320 F. App'x at 866 (where defendant had not objected to facts in PSR, court properly relied in § 3582 proceeding on findings adopted at original sentencing); see also Dillon, 560 U.S. at 826 (rejecting challenge to sentencing court's erroneous application of Guidelines as mandatory because it was beyond scope of § 3582 proceeding).